## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 3522 | DATE | 9/23/2002 |
| CASE TITLE | Gottlieb vs. Sgt. Richards | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, defendant's motion for summary judgment (16-1) is denied. The parties are reminded that the case is set for trial on 1/6/03. The date for filing the final pretrial order is reset to 10/31/02. Status hearing set to 10/1/02 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 2 5 2002 | |
| | Notified counsel by telephone. | | date docketed | 25 |
| ✓ | Docketing to mail notices. | | CV | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE GOTTLIEB, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 01 C 3522 |
| SGT. RICHARDS, Individually, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER



MATTHEW F. KENNELLY, District Judge:

Plaintiff Diane Gottlieb brought this lawsuit pursuant to 42 U.S.C. § 1983 against Chicago Police Sergeant Edward Richards claiming that she was falsely arrested on April 13, 2001. Richards has moved for summary judgment contending that he had probable cause to arrest Gottlieb or that, at a minimum, he is entitled to qualified immunity. For the reasons stated below, the Court denies Richards's motion for summary judgment.

## FACTS

Diane Gottlieb owns a clothing store on East Oak Street in Chicago. On April 13, 2001, Gottlieb and two employees, Maria Jackson and Nicky Small, were working in the store when LaShonna Glover came in. Glover had visited the store two or three times previously and apparently was there that day to pick up a special order. Small recognized Glover and went into the back room to find her order. When Small returned to the front, Glover and Jackson were arguing about the store's return policy. Glover wanted her money back, and Jackson had

1



informed her that the store did not give cash refunds. The argument became heated, and Gottlieb, who until then had been in the back room, came to the front when she heard screaming. She heard Glover yell, "I'm going to blow up the f---ing store!" and that she was going to "f---ing kill" Small and Jackson.

Gottlieb tried to calm Glover down, telling her they would resolve the problem. Glover replied that she would resolve the problem herself; she said she had a gun and was going to kill everyone. It was at this point that Gottlieb made her first call to 911. She told the 911 operator that an irate customer with a gun was threatening people in her store. In all, Gottlieb made five calls to 911, repeating her report that an armed woman was in her store.

During the incident, Glover said she had a gun five or six times and repeatedly threatened to kill Gottlieb, Jackson, and Small. At no time, however, did Gottlieb or anyone in the store actually see a gun, although Gottlieb claims to have seen a silver object in Glover's hand. According to Gottlieb's account, she could not identify the object because Glover was waving her arms frantically as she threatened to kill everyone and blow up the store. Nevertheless, Gottlieb has testified that she believed it was a gun and that she was frightened for her and the others' safety. Richards disputes the sincerity of Gottlieb's belief and maintains that her claims about a gun were a ploy to make the police respond more quickly.

Approximately five to ten minutes after Gottlieb's initial 911 call, the first police officers arrived on the scene. By that time, Glover was calm and the argument was over, although it seems she stopped yelling because the officers had arrived with their guns drawn. Sergeant Edward Richards was one of the officers to respond to the emergency call. When he arrived, about five or six other officers were already there. The officers had determined that no gun was

2

actually involved in the incident, and they were trying to ascertain who had made the report about a gun.

Richards testified that he was annoyed at having had to drive quickly with lights and sirens through heavy traffic. After arriving at the scene and speaking with other officers who had responded, he called the 911 dispatcher to confirm that the 911 caller had stated that a customer armed with a gun was threatening to kill employees. He asked who had made the call and was told it was Gottlieb. Richards then asked Gottlieb if she had made the call about the gun. When she affirmed that she had, Richards had her handcuffed and arrested for making false reports, a disorderly conduct offense. According to Gottlieb, Richards said nothing else to her other than to tell her that she couldn't make false calls and that she was under arrest. Specifically, he did not ask her any questions about the incident with Glover nor did he inquire as to why she had claimed that Glover had a gun.

Gottlieb was taken to the police station. After a couple of hours she was released without being charged. Glover was charged with assault.

## DISCUSSION

Summary judgment is appropriate only if the affidavits and other evidentiary materials submitted by the parties show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Richards argues that he had probable cause to arrest Gottlieb or, alternatively, that he is entitled to qualified immunity for his actions under *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). These inquires are closely related. Probable cause to arrest exists if "at the moment the arrest was made . . . the facts and circumstances within [the officer's] knowledge and of which [he] had

3

reasonably trustworthy information were sufficient to warrant a prudent man in believing" that the arrestee had violated the law. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (internal quotation marks omitted). Even if probable cause did not exist, the arresting officer is immune from suit if a reasonable officer could have believed the arrest was lawful in light of clearly established law and the information the officer possessed. *Id.* at 227. In other words, a law enforcement official who "reasonably but mistakenly conclude[s] that probable cause is present" is entitled to immunity. *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)) (internal quotation marks omitted).

### A. Probable Cause

Richards argues that he is entitled to summary judgment because he had probable cause to arrest Gottlieb. *See Schertz v. Waupaca County*, 875 F.2d 578, 582 ("[T]he existence of probable cause is an absolute bar to a Section 1983 claim for unlawful arrest . . . ."). Probable cause exists where "the facts and circumstances within [the arresting officer's] knowledge . . . [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Faison*, 195 F.3d 890, 893 (7th Cir. 1999) (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949) (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925))) (internal quotation marks omitted) (alterations in original). Examining the facts and circumstances known to Richards at the time of Gottlieb's arrest, we cannot conclude as a matter of law that "a reasonable officer would have believed [Gottlieb] had committed a crime." *Kelly v. Myler*, 149 F.3d 641, 646 (7th Cir. 1998).

An arrest is lawful "once probable cause is established as to each element of an offense."

*Spiegel v. Cortese*, 196 F.3d 717, 725 (7th Cir. 2000).[1] In Illinois, a person commits disorderly conduct when she:

> Transmits . . . to any peace officer, public officer or public employee a report to the effect that an offense . . . is being committed[,] . . . knowing at the time of such transmission that there is no reasonable ground for believing that such an offense . . is being committed. 720 ILCS 5/26-(a)(4).

or

> Calls the number "911" for the purpose of making or transmitting a false alarm or complaint and reporting information when, at the time the call or transmission is made, the person knows there is no reasonable ground for making the call or transmission . . . . 720 ILCS 5/26-1(a)(12).

Knowledge is an essential element of the offense of disorderly conduct as set forth in these subsections of the statute. The statute requires a caller to *know* that the information she is conveying is false or that there is no reasonable basis for believing it to be true. For her actions to qualify as disorderly conduct, Gottlieb would have to know that her statements to the 911 operator that Glover had a gun were untrue or at least would have to lack a reasonable basis to believe them to be true. Probable cause does not require Richards to have certainty of Gottlieb's knowledge; indeed, police are entitled to "let courts resolve conflicts about mental states." *Hebron v. Touhy*, 18 F.3d 421, 423 (7th Cir. 1994). But probable cause does require some

---

[1] A footnote in *Spiegel* seems inconsistent with this statement but nonetheless does not dictate a different result here. The footnote suggests that an officer may not have to establish probable cause as to "each and every element" of an offense before being authorized to make an arrest. *Spiegel*, 196 F.3d 724 n.1 (emphasis omitted). The note goes on to quote *Hunter v. Bryant*, 502 U.S. 224 (1991), for the proposition that what is needed for arrest is instead "'reasonably trustworthy information . . . that' the arrestee . . . had committed a crime." *Spiegel*, 196 F.3d 724 n.1 (quoting *Hunter*, 502 U.S. at 228). Although it is not clear how the two statements regarding whether probable cause as to each element of an offense is necessary are to coexist, as we discuss below, we cannot say as a matter of law that Richards had probable cause under either the "each element" or the "trustworthy information" test.

5

evidence – enough to confer on Richards a reasonable belief that an offense had been committed – indicating that Gottlieb had such knowledge. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991); *cf. BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) (finding no probable cause in an arrest for child neglect absent some evidence that the parents "knowingly or wilfully" failed to prevent their children's predicament where an officer made the arrest without questioning parents or babysitter about the children's condition).

We must therefore examine the undisputed facts to determine if what Richards knew at the time he arrested Gottlieb was sufficient as a matter of law to establish probable cause as to her mental state. When Richards arrived at the store, he came upon a calm scene: Glover was no longer agitated; there was no gun; the public was in no immediate danger; nor was there a risk that Gottlieb would flee if not immediately arrested. Richards essentially knew three things: the 911 call had contained a gun report; Gottlieb had made the call; and there was no gun. Based on these facts, he rightly concluded that Gottlieb's call had contained false information. And based on these facts he also concluded that Gottlieb knowingly misled the 911 operator. Yet none of these facts provide any evidence that Gottlieb made the gun report knowing it to be false.

The information Richards possessed was consistent with various possible scenarios. For instance, Gottlieb might simply have been mistaken about something she had seen in Glover's hand – a mistake that sometimes is made even by police officers. Or she might have been relying on statements by Glover that she had a gun. Or Gottlieb's call could have been an outright lie calculated to get the police to her store more quickly – a clear violation of the statute. Without addressing a single question to Gottlieb, Richards concluded that it was the latter. Yet from his vantage point, knowing only what he knew, this was nothing more than a wild guess – a guess

6

which a fact finder could conclude resulted from his annoyance at having been called to the scene unnecessarily. In the particular circumstances of this case, without asking Gottlieb a single question about the incident and without any other information as to what Gottlieb might have seen or heard, Richards could have no "reasonably trustworthy information" as to what had motivated her to call. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Without more, Richards had no reasonable basis to determine that the gun report was knowingly false and not the result of a mistake made under the stress of a violent encounter. Therefore we cannot find as a matter of law that these facts, without more, would warrant an officer of "reasonable caution" to believe that Gottlieb had committed an offense. *Cf. BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when . . . it is unclear whether a crime had even taken place."); *Llaguno v. Mingey*, 763 F.2d 1560, 1566 (7th Cir. 1985) ("The amount of information that prudent police will collect before deciding to make a search or an arrest, and hence the amount of probable cause they will have, is a function of the gravity of the crime, and especially the danger of its imminent repetition."). In this case, the existence of probable cause turns on what reasonable inferences can be drawn about what Gottlieb knew from the absence of a gun when she claimed there was one. For this reason, it must be decided by a jury.

Richards relies on cases like *Spiegel v. Cortese*, 196 F.3d 717 (7th Cir. 2000), which held that an officer who has probable cause need not investigate further to determine if exculpatory information exists. But here Richards lacked a reasonable basis to believe that a critical element of the crime existed. And, unlike in *Spiegel* and similar cases, Richards was not relying in this

7

regard on information he had learned from a person claiming to be a crime victim, another police officer, or a citizen. Rather, he was relying on his own observations and his own inferences and assumptions. Under the circumstances, Richards had to have *some* information from which a reasonable officer could conclude that Gottlieb had knowingly made a false report of a gun. He has failed to establish that it is undisputed that he had such information.

### B. Qualified Immunity

Richards claims in the alternative that even if probable cause did not exist at the time of the arrest, he reasonably believed that there was probable cause and is thus entitled to qualified immunity. Qualified immunity will protect an officer who mistakenly believes that probable cause exits if that mistake is reasonable. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 2000) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). At issue is whether there was what the Seventh Circuit and other courts have referred to as "arguable probable cause," *e.g.*, *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998) – in other words, *could* a reasonable police officer have believed, even if mistakenly, that probable cause existed in light of clearly established law and the information the officer possessed, *Hunter v. Bryant*, 502 U.S. 224, 227-28 (1991).

*BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986), is instructive on this question. In *BeVier*, a police officer observed filthy, sunburnt children sitting listlessly in the sun on a hot day. Without questioning the babysitter or the parents about the children's condition, he arrested the parents for child neglect. The Seventh Circuit held that the officer was not entitled to qualified immunity because he had acted unreasonably. *Id.* at 127. Noting that the child neglect statute requires parents to have acted "knowingly or wilfully," the court said that, without further inquiry, the officer had no evidence that the parents acted with the requisite mental state. *Id.*

8

Failing to ask any questions was the officer's "mistake." *Id.* The court concluded that this mistake was "unreasonable [where a] few questions would have given defendant some important information" as to whether the parents had actually violated the statute by acting knowingly or wilfully. *Id.*

Richards knew that Gottlieb had made a call that contained information that turned out to be inaccurate. That is all he knew. Simply put, he had absolutely no evidence from which he could have inferred, one way or the other, what Gottlieb knew – an essential element of the offense. As *BeVier* instructs, without some further investigation, Richards could have had no information as to Gottlieb's knowledge and no way to tell whether the gun report was attributable to an honest mistake or to an intentional lie. *Id.* at 128. Based on what Richards knew at the moment he arrested Gottlieb, a reasonable officer could not have determined that Gottlieb violated the statute as opposed to sincerely believing that Glover had a gun. Arguable probable cause therefore did not exist.

Moreover, any reasonable officer would know that the disorderly conduct statute is not meant to punish mistakes made by callers in emergency situations. Because only a caller's knowledge that her call is false can distinguish a sincere but mistaken belief from a lie, some evidence of that knowledge is necessary to establish probable cause that an offense was committed. A prudent officer could not reasonably infer from the mere absence of a gun that Gottlieb had knowingly made a false call.

The Supreme Court has stated that qualified immunity applies if "officers of reasonable competence could disagree" on the issue. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In view of the disputed facts regarding what Richards did and was told at the scene, and taking the

9

evidence as we must in the light most favorable to Gottlieb, we conclude that no reasonable officer could have believed the arrest to be lawful. Specifically, no officer of reasonable competence could have determined that a crime had been committed without some evidence to indicate that Gottlieb knew Glover did not have a gun at the time she called 911. The facts on this score are genuinely disputed. For these reasons, Richards has failed to establish that he is entitled to qualified immunity.

## Conclusion

For the foregoing reasons, defendant's motion for summary judgment [docket item # 16-1] is denied. The parties are reminded that the case is set for trial on January 6, 2003. The date for filing the final pretrial order is reset to October 31, 2002.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: September 23, 2002